457 So.2d 1074 (1984)
Sammie Lee DAVIS, Appellant,
v.
DEPARTMENT OF PROFESSIONAL REGULATION, Appellee.
No. AU-402.
District Court of Appeal of Florida, First District.
August 23, 1984.
William F. Kachergus of Maness & Kachergus, Jacksonville, for appellant.
*1075 Joseph W. Lawrence, Dept. of Professional Regulation, Tallahassee, for appellee.
JOANOS, Judge.
Sammie Lee Davis appeals from a final order of the State of Florida Department of Professional Regulation, Board of Funeral Directors and Embalmers, which revoked his license as a funeral director and embalmer. The question before us is whether appellant, in accepting a position as manager of a funeral home during a period when his license was suspended, was lawfully determined to have violated Sections 470.031(1)(e) and 470.036(1)(i), Florida Statutes. We conclude that he was not.
Appellant had been involved in the funeral business since 1932, receiving a license to embalm in July 1945, and a license to serve as funeral director in July 1947. On March 27, 1980, appellant's dual license was suspended for one year, and on April 1, 1981, he was issued probationary licenses for a three year period. The suspension and probation followed appellant's conviction on federal charges of cashing two social security checks for families of deceased persons. On the conviction, he served four months and 17 days in the federal correctional system.
Before appellant went to prison, Rogers, a witness and complainant in this license-revocation proceeding, asked appellant to work for him when his sentence was completed. Pursuant to this job offer, appellant was employed by Rogers from June 1980 until March 1982. Testimony was presented and the hearing officer found, that the job offer was predicated on Rogers' desire to capitalize on appellant's popularity with the black community. Complainant Rogers acknowledged that his business increased from $70,000 earned in the quarter before appellant went to work for him to $146,791 earned in the first quarter of 1982, when appellant was working for him. Rogers fired appellant in March 1982.
On August 19, 1980, in an effort to comply with the requirements of the Board during his license suspension, appellant notified the Board that he was working for Rogers' Mortuary. No action was taken by the Board in response to appellant's letter. At the hearing, appellant testified that he filed no further reports with the Board because Rogers told appellant that as appellant's employer, he (Rogers) had the responsibility of filing the reports.
On March 11, 1982, Rogers filed a criminal complaint charging appellant with grand theft. It was this complaint that initiated an investigation and the proceedings which culminated in revocation of appellant's license. The grand theft charges filed against appellant were eventually dropped by the state attorney's office.
With regard to the operation of the mortuary business, it was uncontroverted that appellant did no embalming. The testimony that appellant engaged in directing funerals came only from Rogers, the complainant. However, there was testimony that indicated that patrons of the mortuary felt that appellant was making all the arrangements for certain funerals.
In its final order dated August 17, 1983, the Board dismissed Counts One and Two of the Administrative Complaint, but found that appellant had violated Sections 470.031(1)(e) and 470.036(1)(i), Florida Statutes as charged in Count Three. Appellant's dual license to practice the profession of funeral directing and embalming was revoked and he was fined $500.
Count Three of the Administrative Complaint, the only count which the board found appellant had violated, charged: (1) that on or about March 27, 1980, the Board had suspended appellant's license for one year and placed him on three years probation following the license suspension; (2) that appellant became manager of a funeral home while his license was suspended; and (3) that based upon the foregoing, appellant had violated Sections 470.031(1)(e) and 470.036(1)(i), Florida Statutes.[1]
*1076 This case points up the tension between the strict construction required in a license revocation proceeding and the deference an appellate court is called upon to accord administrative findings of fact. Cases dealing with license revocation consistently hold that statutes authorizing the revocation of a license to practice a business or profession must be strictly construed for they are penal in nature. State v. Pattishall, 99 Fla. 296, 126 So. 147 (1930). Pattishall was a revocation proceeding against a licensed dentist. The accusation charged the dentist with employing one who was not a licensed dentist of the state, and allowing this person to practice dentistry in his office. The court found that the accusation failed "to charge the dentist with having committed any act which under the provisions of the statute constitute grounds for the revocation of his license to practice dentistry." Id. 126 So. at 148. The court analogized the provisions of the statute in regard to acquiring a license to practice dentistry and the revocation of such license to the statutes in regard to procuring a license to practice law and the disbarment of attorneys. In so doing the court found that the law applicable to disbarment of attorneys was applicable, and cited to State ex rel Fowler v. Finley, 30 Fla. 302, 11 So. 500, 503 (1892), where the court said:
"The proceedings in such matters are summary in their nature, but not arbitrary or despotic. The court acts in the exercise of a sound discretion and according to law. The charges preferred against the attorney should be specific, due notice of them must be given, and full opportunity afforded for an answer and a fair investigation of their merits. The consequences to an attorney of a judgment disbarring him from the practice of his profession are serious enough to suggest such a course. His profession may be a source of great value to him, equal to any property rights which he may have, and the loss of it may inflict destitution and poverty upon himself and family. In such proceedings the attorney is clearly entitled to have the causes urged as a ground for his disbarment specifically and particularly stated, in order that he may meet them, and a defect in the proceedings in this respect is a ground for interposition by the supreme court. Ex parte Bradley, 7 Wall. 364 [19 L.Ed. 214]; Ex parte Robinson, 19 Wall. 505 [22 L.Ed. 205]; State ex rel v. Kirke [12 Fla. 278], supra; Ex parte Burr, 9 Wheat. 529 [6 L.Ed. 152]."
This insistence that charges respecting revocation of a license must be "particularly and specifically stated" was reiterated by this court in Bowling v. Dept. of Insurance, 394 So.2d 165, 171 (Fla. 1st DCA 1981), where the court said "[i]n a proceeding under a penal statute for suspension or revocation of a valuable business or professional license, the term competent substantial evidence takes on vigorous implications that are not so clearly present on other occasions for agency action under Chapter 120." In Bowling the court echoes the concern expressed by the Florida Supreme Court in State v. Pattishall, supra, with regard to the higher seriousness accorded to the requirement of substantiality when the matter at stake is a license that allows one to earn a livelihood, saying "when the proceeding may result in the loss of a valuable business or professional license, the critical matters in issue must be shown by evidence which is indubitably as `substantial' as the consequences." Bowling, supra, at 172. In Bowling, the court rejected the Department's evidentiary findings on the ground that they lacked a substantial basis for establishing Bowling's guilt on the eight counts with which he was *1077 charged. The court vacated the order revoking Bowling's license. Substantiality of evidence in license suspensions and revocations was stressed too in Bach v. Florida State Board of Dentistry, 378 So.2d 34 (Fla. 1st DCA 1980). Bach concerns a six-month suspension of a dentist's license and a one-year suspension of license for a dental hygienist, the wife of the suspended dentist. The court found that the record clearly indicated that Mrs. Bach administered an anesthetic, a procedure which a dental hygienist is precluded from performing. Evidence that the dentist permitted this conduct was circumstantial. The court reinstated the dentist's license, ruling that the law of agency would not permit the conclusion, in the absence of evidence of Dr. Bach's knowledge, that he impliedly authorized or permitted his wife's proscribed acts. A recent Third District Court of Appeal case, Robinson v. Florida Dept. of Dentistry, 447 So.2d 930 (Fla. 3d DCA 1984), Opinion filed May 2, 1984, turns on the substantiality requirement of Bowling. An administrative complaint was filed against Robinson in 1981. The hearing officer's recommendation of license suspension and fine was predicated on the testimony of one dentist, a general practitioner, employed by the complainant after he left Robinson. The court termed it self-evident that a professional license ought not be suspended on the testimony of one interested witness. The court found no competent substantial evidence to support revocation and reversed.
In addition to substantial evidence to support a license revocation, the cases require that the accusation state with specificity the acts complained of, to allow the licensee a fair chance to prepare a defense. Hickey v. Wells, 91 So.2d 206 (Fla. 1957). In Hickey a dentist was charged with (1) allowing an unlicensed person to practice dentistry, (2) being the proprietor of the office where the illegal activity occurred, and (3) giving aid in performance of the unlawful acts by making his equipment available. The Board suspended Hickey for three years. The Supreme Court reversed on the ground that Hickey had not been accorded a fair opportunity to prepare a defense because the charge did not specify that "the practice of dentistry" took "place on some person at a given time, and (by statute) in the office of the appellant." Id., 209. In accord is Moncrief v. State, Comm'r of Insurance, 415 So.2d 785 (Fla. 1st DCA 1982), in which this court vacated an order as to a count of an administrative complaint which charged a bail bondsman with failure to have his office open during the morning hours of March 1979. There was no factual dispute on this issue, and Moncrief was fined $100 because he failed to maintain his office during "normal business hours" in violation of section 648.34(2)(c) and Rule 4-1.04, F.A.C. Since the term "normal business hours" was not defined in either the statute or the rule, the court said the Department was required to prove by conventional facts that the bonding office should be accessible to the public between the hours of 8:00 or 9:00 a.m. and 4:00 to 6:00 p.m., as the Department contended. See also: Reed-Gautier Funeral Home, Inc. v. State Bd. of Funeral Directors and Embalmers, 295 So.2d 366, 368 (Fla. 3d DCA 1974)  "The offense charged against the petitioners plainly does not fall within the statutory language."
Taken at face value, the Count Three charges on which the Department based its revocation of appellant's license indicate that it is the Department's position that appellant was automatically in violation of the one-year license suspension (March 27, 1980 to March 27, 1981) when he accepted employment as manager of a funeral home. However, the statute does not require one to have a license to manage a funeral home. Rather, the statute provides that each licensed funeral establishment must have at least one full-time licensed funeral director in charge. Section 470.024(2), (6).[2] In a comparable situation *1078 this court reversed the Board's license suspension and fine of a licensed funeral home and its licensed director. The issue was whether the licensees unlawfully "knowingly employed unlicensed persons in the practice of funeral directing." The court reversed the order and dismissed the charges, finding "[t]o the extent the issue is one on which we should defer to the Board's professional expertise, the order comes to us without the necessary elucidation of the Board's definition of `the practice of funeral directing' and without a record foundation that would support the views attributed to the Board upon this appeal." Woodward v. Department of Professional Regulation, 432 So.2d 146, 147 (Fla. 1st DCA 1983).
In license revocation proceedings, case law requires strict construction of statutes and specificity of charges. In the case before us, the Board's Count Three charges do not comport with the hearing officer's findings of fact nor do they state with the requisite specificity the grounds relied upon by the Board to revoke appellant's license. The hearing officer found that in December 1980 and in late February or early March 1981, appellant arranged and conducted two funerals. "Thus, during the period of his license suspension, respondent held himself out to the public as a funeral director and did perform in this capacity." (Record, p. 456). Section 470.002(4), Florida Statutes[3] offers as one definition of the "practice of funeral directing  offering or holding oneself out as offering such services." The testimony presented at the hearing, although conflicting on whether appellant ever served as a funeral director, clearly supports a finding that in the eyes of his public appellant was performing as a funeral director. Therefore, while the hearing officer's findings of fact do indeed support a finding that appellant may have been in violation of Section 470.002(4), Florida Statutes, such a finding will not support revocation of appellant's license, for Count Three of the Administrative Complaint does not charge appellant with this particular violation.
The Board cites Chicken'n Things v. Murray[4] for the proposition that the reviewing court may not "determine sufficiency of the evidence if there was some evidence to support the verdict or judgment complained of, ..." and Powell v. Board of Public Instruction of Levy Co.[5] to refute appellant's claim that in license revocation actions the charges must be specific. Chicken'n Things deals with a worker's compensation disability claim, so is distinguishable from Bowling, supra, where the court held that the threat of license revocation required truly substantial evidence to support the charges. In Powell, a teacher challenged the specificity of the charges against him but the court found that so long as "the party involved is informed with reasonable certainty of the charges against him, has a reasonable opportunity to defend himself, and the proceedings are conducted in a fair and reasonable manner," then due process has been satisfied. Powell is distinguishable in that in Powell the risk was the loss of a teaching position, but not the loss of a teaching certificate. *1079 Therefore, the result in Powell does not rise to the level of seriousness contemplated by courts called upon to decide license revocations. Nor can it be seriously contended that being charged with managing a funeral home placed appellant on notice and enabled him to defend against a charge that he was acting in violation of a lawful order of the Board, particularly since appellant had notified the Board of his employment with Whittington-Rogers Mortuary shortly after he began working for the organization.
To be in violation of the Board's amended order which suspended for one year his dual license to act as a funeral director and embalmer, appellant had to serve as a funeral director. The Board takes the position that managing a funeral home is synonomous with serving as a funeral director. Our research has not disclosed a case that offers the elucidation sought by the court in Woodward, supra, regarding the Board's definition of funeral directing, nor have we found a case that distinguishes between management activities and funeral directing activities. The statute deals with management of a funeral home as an activity that does not require a license. Here the Department failed to allege any facts that would constitute a charge that appellant was acting as funeral director, and there is no evidence in the record that demonstrates that appellant violated his license suspension by acting as manager of the Whittington-Rogers Funeral Home.
Therefore, the Board's order revoking appellant's license is reversed and the cause is remanded with directions to reinstate appellant's license.
SHIVERS and THOMPSON, JJ., concur.
NOTES
[1] § 470.031 Prohibitions; penalties. 

(1) No person shall:
.....
(e) Use or attempt to use a license registration which has been suspended or revoked.
§ 470.036 Disciplinary proceedings. 
(1) The following acts constitute grounds for which the disciplinary actions in subsection
(2) may be taken:
.....
(i) Violation of a lawful order of the board or department previously entered in a disciplinary hearing or failure to comply with a lawfully issued subpoena of the board or department.
[2] § 470.024 Funeral establishment; licensure. 

(2) No person shall conduct, maintain, manage, or operate a funeral establishment unless an establishment operating license has been issued by the department for that funeral establishment.
.....
(6) Each licensed funeral establishment shall have at least one full-time director in charge and shall have a licensed funeral director reasonably available to the public during normal business hours for that establishment.
[3] § 470.002 Definitions. 

(4) "Practice of funeral directing" means making, at need or preneed, arrangements for, or directing the arrangements for, the preparation and transportation of dead human bodies for final disposition, or using, in connection with one's name the words "funeral director," "licensed funeral director," "undertaker," or "mortician"; or offering, or holding oneself out as offering such services. However, nothing herein shall be construed to require a direct disposer or an agent registered under chapter 470.028 to be a funeral director. (e.s.)
[4] Chicken'n Things v. Murray, 329 So.2d 302, 304 (Fla. 1976).
[5] Powell v. Bd. of Public Instruction of Levy Co., 229 So.2d 308, 311 (Fla. 1st DCA 1970).