# DEPARTMENT OF BUSINESS REGULATION, DIVISION OF ALCOHOLIC BEVERAGES AND TOBACCO v. HICKS d/b/a SANDSPUR SALOON

Case No. 84-3824

State of Florida, Division of Administrative Hearings

March 12, 1985

## APPEARANCES OF COUNSEL

**Thomas A. Klein** for petitioner.

**Ted A. Stokes** for respondent.

## OPINION

## RECOMMENDED ORDER

J. LAWRENCE JOHNSTON, Hearing Officer.

A final hearing was held in this case in Pensacola on February 14, 1985. The issue is whether the petitioner Department of Business Regulation, Division of Alcoholic Beverages and Tobacco (Division), should suspend, revoke or impose civil penalties against the alcoholic beverage license of respondent Clarece Hicks d/b/a Sandspur Saloon under Section 561.29, Florida Statutes (1983). Specifically, the Division has charged respondent in a Notice to Show Cause containing the following allegations:

On or about January 13, 1984, you, Clarece Hicks, licensed under

the beverage laws of the State of Florida, dba Sandspur Saloon, did purchase stolen property, to wit: two cartons of cigarettes, from a confidential informant working in an undercover capacity for the Santa Rosa County Sheriff's Office, in violation of F.S. 812.019 within F.S. 561.29.

On or about January 13, 1984, you Clarece Hicks, and/or your servant, employee or agent, to wit: James Hicks, licensed under the beverage laws of the State of Florida, dba Sandspur Saloon, did purchased stolen property, to wit: two cartons of cigarettes, from a confidential informant working in an undercover capacity for the Santa Rosa County Sheriff's Office, in violation of F.S. 812.019 within F.S. 561.29.

On or about February 2, 1984, you, Clarece Hicks, and/or your servant, employee or agent, to wit: James Hicks, licensed under the beverage laws of the State of Florida, dba Sandspur Saloon, did purchase stolen property, to wit: two cartons of cigarettes, from a confidential informant working in an undercover capacity for the Santa Rosa County Sheriff's Office, in violation of F.S. 812.019 within F.S. 561.29.

On or about February 2, 1984, you, Clarece Hicks, licensed under the beverage laws of the State of Florida, dba Sandspur Saloon, did purchase stolen property, to wit: two cartons of cigarettes, from a confidential informant working in an undercover capacity for the Santa Rosa County Sheriff's Office, in violation of F.S. 812.019 within F.S. 561.29.

On or about February 22, 1984, you, Clarece Hicks, and/or your servant, employee or agent, to wit: Pamela Ratliff, licensed under the beverage laws of the State of Florida, dba Sandspur Saloon, did purchase stolen property, to wit: seven cartons of cigarettes, from a confidential informant working in an undercover capacity for the Santa Rosa County Sheriff's Office, in violation of F.S. 812.019 within F.S. 561.29.

Respondent denied the allegations and requested a formal administrative proceeding. Respondent also denied most of a Request for Admissions filed by the Division before the hearing, and the Division filed a Motion for Costs and Attorneys Fees incurred in proving at final hearing the facts for which admissions had been sought.

## FINDINGS OF FACT [1]

1. Clarece Hicks (Clarece) is the owner of the Sandspur Saloon

---

[1] Both parties submitted proposed findings of fact. The proposed findings of fact were

(Sandspur), which is located on Highway 98 in Navarre, Santa Rosa County, Florida. Clarece and the Sandspur are currently licensed by the State of Florida, Department of Business Regulation, Division of Alcoholic Beverages and Tobacco (Division), under license number 67-55, Series 1-COP.

2. James Hicks (James) is Clarece's ex-husband. The Hickses were divorced approximately 10 years ago, but they continue to have a good relationship, and James holds himself out, at least from time to time, as Clarece's husband. James' precise legal and business relationship to Clarece was not proven, but it was proved that James is at the Sandspur almost every day. He is very familiar with the premises and the operations. He frequently stands at the corner of the bar and regularly answers incoming telephone calls when he is near the telephone. On occasion, James also goes behind the bar and, on at least one occasion, has been observed using the cash register and serving beer. James also occupies himself as a commercial fisherman and gives or sells the Sandspur seafood to be prepared in the kitchen. On occasion, James also does maintenance and repair work for Clarece at the Sandspur.

3. On January 13, 1984, while at the Sandspur, James was approached by a confidential informant employed by the Santa Rosa County Sheriff Department whom James knew as Brandy. Brandy told James she had access to stolen cigarettes and asked if James knew anyone who might want to buy them. James checked around and responded that his wife Clarece would buy them. Brandy left the premises to get the cigarettes and later returned. When James told Brandy that the buyer he had found had left the bar, Brandy asked whether Clarece had not said that she wanted to buy some cigarettes. James said that he would check again and brought Brandy into the kitchen area to see Clarece. Clarece asked whether Brandy had Pall Mall Gold, and Brandy responded that she had only Benson and Hedges and Pall Mall Regular. Clarece said she would take two cartons of Benson and Hedges. James gave Brandy $8.00 in cash, and Brandy gave Clarece the cigarettes. Both James and Clarece believed that the cigarettes were stolen.

reviewed, and the following Findings of Fact attempt to rule, either directly or indirectly, on each proposed findings of fact. Proposed findings of fact which were approved and adopted are reflected in the following Findings of Fact. Where proposed findings of fact are not reflected and no direct ruling rejecting them is apparent, the proposed findings of fact have been rejected as being subordinate, cumulative, immaterial or unnecessary.

4. On February 2, 1984, Brandy and an undercover deputy employed by the Santa Rosa County Sheriff Department, Bruce Johnson, entered the Sandspur. During this visit, Brandy spoke with James and told him that she had some stolen cigarettes for sale which were "fresh, just stolen." James replied that he would buy two cartons of Winston Lights for his friend, Scoot Harvel. James paid Brandy $8.00 in cash, and Brandy gave him two cartons of the cigarettes. James later gave the cigarettes, free of charge, to Scoot Harvel. It was not proved that Clarece was involved in or aware of this particular transaction. But the events on January 13, 1984 proved that Clarece permitted James to conduct this kind of transaction at the Sandspur.

5. On February 22, 1984, Brandy and Johnson again entered the Sandspur. Johnson spoke with Pam Ratliff, an employed bartender at the Sandspur, whom Johnson knew from conversation during his visit on February 2, 1984. Johnson told Ratliff that he had stolen cigarettes for sale. Ratliff responded that she would be interested in buying Benson and Hedges or Winston Lights and asked about the prices. Johnson responded and told her he did not have those brands at the moment but would return later with them. By the time Johnson and Brandy returned to the Sandspur, Ratliff had left for home. Johnson telephoned Ratliff from one of the telephones at the Sandspur, but it was not proved whether anyone at the Sandspur overheard the details of either Johnson's telephone conversation with Ratliff or his earlier conversation with her on the premises. Nor was it proved that Clarece permitted Ratliff to conduct this type of transaction at the Sandspur. The later sale of cigarettes to Ratliff occurred at Ratliff's home, not at the Sandspur.

## CONCLUSIONS OF LAW

1. Section 561.29(1)(a), Florida Statutes (1983), states in pertinent part:

(1) The Division is given full power and authority to revoke or suspend the license of any person holding a license under the Beverage Law, when it is determined or found by the division upon sufficient cause appearing of:

(a) Violation by the licensee or his or its agents, officers, servants, or employees, on the licensed premises, or elsewhere while in the scope of employment, of any of the laws of this State or of the United States, . . . or permitting another on the licensed premises to violate any of the laws of this State or of the United States; . . . .

(2) Section 812.019, Florida Statutes (1983), states:

(1) Any person who traffics in, or endeavors to traffic in, property that he knows or should know was stolen shall be guilty of a felony of the second degree, punishable as provided in ss. 775.082, 775.083, and 775.084.

(2) Any person who initiates, organizes, plans, finances, directs, manages or supervises the theft of property and traffics in such stolen property shall be guilty of a felony of the first degree, punishable as provided in ss. 775.082, 775.083, ad 775.084.

3. Section 812.012(7), Florida Statutes, (1983), states:

(7) "Traffic" means:

(a) To sell, transfer, distribute, dispense or otherwise dispose of property.

(b) To buy, receive, possess, obtain control of, or use property with the intent to sell, transfer, distribute, dispense or otherwise dispose of such property.

4. Regarding the first two charges in the Notice To Show Cause, the evidence did not prove that either Clarece or James Hicks did, or intended to, sell, transfer, distribute, dispense or otherwise dispose of the stolen cigarettes that were sold in the kitchen of the Sandspur on January 13, 1984. The evidence did not prove whether Clarece or James bought the cigarettes. If James bought the cigarettes, he would have been technically guilty of violating Section 812.019. But it could have been just as easily inferred from the facts proven that Clarece and her "husband" James bought the cigarettes for Clarece's own personal use. Under those facts, one of the elements of the crime of "trafficking" under Section 812.019 would not have been proved. See *Townsley v. State,* 443 So.2d 1072 (Fla. 1st DCA 1984); *Coley v. State,* 391 So.2d 725 (Fla. 1st DCA 1980); *Lancaster v. State,* 369 So.2d 687 (Fla. 1st DCA 1979). Therefore, the first two charges of the Notice to Show Cause must be dismissed.

5. The third charge of the Notice to Show Cause was proved. James Hicks bought cigarettes he knew were stolen and disposed of them by giving them to his friend Scoot Harvel while the two were at the Sandspur. The evidence was sufficient to prove that Clarece Hicks permitted James to conduct such transactions.

6. On the other hand, the fourth charge in the Notice to Show Cause was not proved. There was no evidence that Clarece Hicks purchased or sold any cigarettes on February 2, 1984.

7. Nor did the evidence prove the fifth and final charge in the Notice

to Show Cause. The sale to Pam Ratliff took place at Ratliff's home, not on the licensed premise.

8. Certain evidence regarding a sale of cigarettes to an individual named Doug Davis was received to the extent of its relevance to Clarece Hicks' knowledge or negligence. But such evidence was not admitted for purposes of proving a new charge of which Clarece Hicks had no notice prior to final hearing. The Division's attempt in its Proposed Recommended Order to amend the Notice to Show Cause to add an additional charge regarding Doug Davis is based upon a misinterpretation of the evidentiary ruling and is denied. Cf. *Davis v. Department of Professional Regulation*, 457 So.2d 1074 (Fla. 1st DCA 1984).

9. The Division's Motion for Costs and Attorneys Fees, served February 25, 1985, invokes the final order authority of the Division of Administrative Hearings under Section 120.58(1)(a), Florida Statutes (1983), as amended by Chapter 84-173, Laws of Florida (1984). Jurisdiction therefore should be retained for purposes of the ruling on the Division's motion by separate order filed simultaneously with this Recommended Order and for determining the Division's reasonable expenses, including attorney fees, if necessary.

## RECOMMENDATION

Based upon the foregoing Findings of Facts and Conclusions of Law, it is recommended that petitioner Department of Business Regulation, Division of Alcoholic Beverages and Tobacco, enter a final order:

1. Holding respondent Clarece Hicks d/b/a Sandspur Saloon guilty under the third charge in the Notice to Show Cause;

2. Imposing a civil penalty of $500; and

3. Dismissing the other charges in the Notice to Show Cause.

Jurisdiction is retained for purposes of the ruling on the Division's Motion for Costs and Attorneys Fees, served February 25, 1985, filed simultaneously with this Recommended Order and for the purposes of determining the Division's reasonable expenses, including attorney fees.