# DEPARTMENT OF PROFESSIONAL REGULATION, BOARD OF MEDICAL EXAMINERS v KOO

## Case No. 86-1066

State of Florida, Division of Administrative Hearings

August 26, 1987

### APPEARANCES OF COUNSEL

**Ray Shope** for petitioner.

**Dong Hack Koo,** M.D. pro se.

### OPINION OF THE COURT

DIANE K. KIESLING, Hearing Officer.

### *RECOMMENDED ORDER*

Pursuant to notice, a hearing was held in this case on June 3, 1987,

in Jacksonville, Florida, before the Division of Administrative Hearings, by its designated Hearing Officer, Diane K. Kiesling.

The issue is whether Respondent's license as a physician should be revoked or otherwise penalized for the acts alleged in the Amended Administrative Complaint dated November 19, 1986.

Petitioner presented the testimony of Diane Rabideau and Alexander E. Rosin, M.D., together with fifteen (15) exhibits admitted in evidence. Respondent presented his own testimony. A transcript of the proceedings was filed on July 23, 1987. At the conclusion of the formal hearing, the parties agreed that their proposed orders would be filed no later than thirty (30) days after the filing of the transcript. Petitioner's proposed order was filed on August 18, 1987. Respondent failed to file a proposed order. All proposed findings of fact and conclusions of law which were timely filed have been considered. A ruling has been made on each proposed finding of fact in the Appendix attached hereto and made a part of this Recommended Order.

## FINDINGS OF FACT

1. Dong Hack Koo, M.D., is a licensed physician in the State of Florida, having been issued license number ME 0027494. Koo was so licensed at all times material to the Amended Administrative Complaint.

2. At all times material to this cause, Koo maintained an office at 121 East 8th Street, Jacksonville, Florida 32206.

3. On July 10, 1985, Diane Rabideau, an Investigator for the Department of Professional Regulation, inspected Koo's offices and found them to be unclean, with evidence of roach eggs present under a sink.

4. Rabideau also found a rectal speculum and two vaginal speculums lying on a sink. Koo told Rabideau that the rectal speculum and the two vaginal speculums had been used. No evidence was presented to indicate how long the speculums had been on the sink. If such instruments are not cleaned quickly and properly following use, there is a high chance of spreading infection to the next patient to use the instrument. Such instruments should be placed in a cleansing solution and scrubbed, then wrapped and sterilized. It is the community practice to clean such instruments as soon as possible after use.

5. According to Dr. Rosin, any physician who performs abortions in an unclean office with instruments lying around that have not been properly cleaned, has practiced below the community standard of care.

**217**

However, no evidence was presented to show that Koo performed abortions under such circumstances.

6. Koo does perform first trimester abortions in his office. It was not disputed that abortions are a medical and surgical procedure which can be dangerous. Emergency situations can arise during abortions and these emergencies require the presence of emergency equipment such as suction and the abilith to start an intravenous medication.

7. Koo does maintain suction equipment and intravenous solutions in his office. However, when possible he immediately transfers emergency patients to another facility.

8. Koo does perform abortions in his office without the presence of an assistant to aid in emergency situations.

9. According to Dr. Rosin, the standard of care in the community requires that an assistant be present during an abortion to assist the physician should an emergency situation arise. Additionally, according to Dr. Rosin, a physician who performs abortions without emergency equipment or without an assistant has failed to practice medicine with that level of care, skill, and treatment recognized by a reasonably prudent similar physician as acceptable under similar conditions and circumstances.

10. When Rabideau visited Koo's office on July 10, 1985, she obtained a sampling of drugs kept by Koo for dispensing to patients. The sampling revealed that a majority of the drugs had expired. However, no evidence was presented that this is a violation of *Florida Statutes.*

11. Rabideau also found that Koo maintained a number of Schedule III, IV, and V, controlled substances in his office which he dispensed to patients. In dispensing these controlled substances, Koo used the instructions for use which are printed on the packaging. He also, at times, taped a small piece of paper to the packaging with his telephone number and the name of the patient. Koo did not completely label these controlled substances, which he dispensed, with his name and address, the date of delivery, directions for use, the name of the patient, and a warning concerning the transfer of the substance.

12. Koo maintains no inventory of the scheduled controlled substances which are kept in his offices and dispensed to his patients.

13. On August 6, 1985, Diane Rabideau again visited Koo's office. While Rabideau waited, a female patient by the name of Mary Green was seen by Koo and left with a prescription. Rabideau then asked Respondent to present the medical records on the patient, Mary Green.

218

Koo was unable to present any medical records for the patient which he had just seen and to whom he had just dispensed medication.

14. Koo's office procedure regarding patient medical records is to record histories and examination result on the patient medical records during the patient's visit. These medical records are kept in individual folders under the name of each patient. When a patient presents for treatment, the medical records for that patient are pulled and given to the doctor. After each visit, the patient's medical records are refiled.

15. On or about March 16, 1986, pursuant to a subpoena from the Department of Professional Regulation, Koo provided the original medical records on ten (10) abortion patients.

16. These original medical records were examined by John F. McCarthy, a questioned documents expert for the Florida Department of Law Enforcement. McCarthy's examination by electrostatic detection apparatus revealed that numerous indentations on the records superimposed with information from other records. For example, Exhibit 6 contained indentations from the writing on the fact of Exhibit 10. Further, McCarthy found indentations on Exhibit 6 resulting from the writing on Exhibit 8. Thus, Exhibit 8 was on top of Exhibit 6 when it was prepared. Exhibit 8, however, is dated July 24, 1985, and Exhibit 6 is dated May 29, 1985. McCarthy's expert opinion is that at the time the various documents were prepared, they were on top of each other. It is therefore fund that Exhibits 1-10, the original medical records on the ten named abortion patients, were not prepared at the time Koo saw the patients, but were instead all prepared at the same time, in response to the subpoena. It therefore must be found that the records were fabricated by Koo in response to the Department's subpoena.

17. Prior to performing an abortion, a physician needs to verify whether the patient has Rh positive or negative blood type. The physician cannot rely on patients' representations that the Rh factor is positive or negative, but most obtain independent verification. This is because patients know that if they have Rh negative blood, they must receive a shot which is expensive.

18. Koo relied on the patients' statements in ascertaining the Rh factor and did not obtain independent verification.

19. In Dr. Rosin's expert opinion, the failure of a physician to obtain independent verification of the Rh factor poses a potential for harm to the patient and such failure is a failure to practice medicine with that level of care, skill, and treatment that is recognized in the medical community.

219

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the parties to and subject matter of this proceeding. Section 120.57(1), *Florida Statutes.*

Section 458.331(1), *Florida Statutes,* provides that disciplinary action may be taken based on the following acts:

. . . . . . . . . . .

(h) Failing to perform any statutory or legal obligation placed upon a licensed physician.

(i) Making or filing a report which the licensee knows to be false, intentionally or negligently failing to file a report or record required by state or federal law, willfully impeding or obstructing such filing or inducing another person to do so. Such reports or records shall include only those that are signed in the capacity as a licensed physician.

. . . . . . . . . . .

(l) Making deceptive, untrue, or fraudulent representations in the practice of medicine or employing a trick or scheme in the practice of medicine when such scheme or trick fails to conform to the generally prevailing standards of treatment in the medical community.

. . . . . . . . . . .

(n) Failing to keep written medical records justifying the course of treatment of the patient, including, but not limited to, patient histories, examination results, and test results.

. . . . . . . . . . .

(t) Gross or repeated malpractice or the failing to practice medicine with that level of care, skill, and treatment which is recognized by a reasonably prudent similar physician as being acceptable under similar conditions and circumstances. . . .

Section 893.05(2), *Florida Statutes,* requires:

(2) When any controlled substance is dispensed by a practitioner, there shall be affixed to the original container in which the controlled substance is delivered a label in which appears:

(a) The date of delivery.

(b) The directions for use of such controlled substance.

(c) The name and address of such practitioner.

(d) The name of the patient and, if such controlled substance is

prescribed for an animal, a statement describing the species of the animal.

(e) A clear, concise warning that it is a crime to transfer the controlled substance to any person other than the patient for whom prescribed.

Section 893.07, *Florida Statutes,* requires certain record keeping for persons dispensing controlled substances, including an inventory and a complete and accurate record of each substance received, sold, delivered, or otherwise disposed of by the practitioner.

Section 499.007(12)(b), *Florida Statutes,* further requires a physician dispensing drugs to provide labeling on the drug containing the name and address of the dispenser, the prescription number and date of such prescription or its filling, the name of the prescriber and the name of the patient, and the directions for use and cautionary statements.

6. In applying these statutes to the foregoing Findings of Fact, it must be concluded that Koo violated Sections 499.007(12)(b) and 893.05(2) regarding the labeling requirements in dispensing of controlled substances. These labeling requirements are statutory obligations placed on the licensed physician and Koo's failure to comply with these requirements is a violation of Section 458.331(1)(h). Additionally, Koo failed to maintain an inventory of the controlled substances in his office and therefore violated Section 893.07. Koo's failure to perform this statutory duty is also a violation of Section 458.331(1)(h). Koo is therefore guilty of the violations alleged in Count Two and Count Three of the Amended Administrative Complaint.

It has further been found that Koo failed to maintain written medical records justifying the course of treatment and that he presented fabricated records concerning the ten (10) abortion patients. Based upon these Findings of Fact, it is concluded that Koo has failed to maintain medical records and has violated Section 458.331(1)(n). Koo's fabrication of medical records is a violation of Section 458.331(1)(i) in that medical records are required to be kept and these fabricated medical records were provided pursuant to a legal subpoena by the Department. Accordingly, Koo is guilty of the violations alleged in Count Four and Count Five of the Amended Administrative Complaint.

Section 458.331(1)(l), makes it a violation for a physician to make deceptive, untrue, or fraudulent representations in the practice of medicine. Further, a physician is required to maintain medical records justifying the course of treatment of a patient pursuant to Section 458.331(1)(n). Where, as here, a physician fabricates medical records,

such fabrication amounts to the making of deceptive, untrue, or fraudulent representations in the practice of medicine. Therefore, Koo has violated Section 458.331(1)9l) and is guilty of the violation alleged in Count Six of the Amended Administrative Complaint.

Koo's failure to have an assistant present during abortion procedures in the office and his failure to obtain independent verification of a patient's Rh factor both constitutes the practice of medicine below the standard acceptable in the community. Accordingly, Koo may be guilty of violating Section 458.331(1)(t), in that he has failed to practice medicine with that level of care, skill, and treatment recognized by a similar physician as acceptable under similar conditions and circumstances. However, Dr. Koo was not properly charged with this violation. Count One of the Amended Administrative COmplaint alleges that Koo violated Section 458.331(1)(t) by maintaining his office in a dirty and disorderly condition, by not maintaining instruments necessary for the treatment of and surgery on his patients in a proper state of cleanliness, by not following sterilization procedures for those instruments, by maintaining no oxygen supply or other equipment or supplies for use in a medical emergency in the office, and by dispensing outdated medications to patients. Petitioner failed to prove the existence of any of the facts alleged in Count One. Instead, Petitioner chose to prove other facts which may support the conclusion that Section 458.331(1)(t) had been violated. "Although a complaint filed by an administrative agency is not required to fulfill the technical niceties of a legal pleading, it must be specific enough to inform the accused with reasonable certainty of the nature of the charges. . . . Furthermore, a complaint seeking a license revocation must state with specificity the acts complained of to allow the licensee a fair chance to prepare a defense. *Hunter v. Department of Professional Regulation,* 458 So.2d 842 (Fla. 2d DCA 1984). See also *Davis v. Department of Professional Regulation,* 457 So.2d 1074 (Fla. 1st DCA 1984). Having failed to allege any of the underlying facts upon which it now tries to support the violation alleged, Petitioner cannot now maintain that the above-cited principles and due process considerations have been met. It is therefore concluded that Count One of the Amended Administrative Complaint should be dismissed.

## RECOMMENDATION

Based upon the foregoing Findings of Fact and Conclusions of Law, it is

RECOMMENDED:

That the Board of Medicine enter a Final Order finding Dong Hack

Koo, M.D., GUILTY of violating Counts Two, Three, Four, Five, and Six of the Amended Administrative Complaint, and therein SUSPEND his license to practice medicine for a period of six (6) months during which he be required to successfully complete continuing education course in maintaining, controlling, dispensing, labeling, and inventorying controlled substance, and in maintaining adequate patient records to justify the course of treatment.

DONE AND ENTERED this 26th day of August, 1987, in Tallahassee, Florida.